# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | ) | |
| AVI SMITH-RAPAPORT, | ) | Docket No.: 3:22-cv-00320 -MPS |
|     *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA, N.A. | ) | JUNE 9, 2022 |
|     *Defendant.* | ) | |
| | ) | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

PAGE

TABLE OF AUTHORITIES     ii

I.     BACKGROUND     1

     A.    Overview     1

     B.    Allegations Of Complaint     3

     C.    Summary Of Claims     4

II.     ARGUMENT     5

     A.    Legal Standard Re: Fed. R. Civ. P. 12(b)(6) Motion To Dismiss     5

     B.    CUTPA     6

     1.    The Defendant's Negating The Plaintiff's Rewards Points Constitutes An Actual Deceptive Practice     6

     2.    The Defendant's Unjustified And Unexplained Detention Of The Plaintiff's Credit Balance, As Alleged, Qualifies As Conduct That Is "Immoral, Unethical, Oppressive, Or Unscrupulous"     9

     C.    Statutory Theft – C.G.S. § 52-564     10

     D.    Inentional Infliction Of Emotional Distress     14

     CONSLUSION     17

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Adams v. Liberty Bank,* 2021 U.S. Dist. LEXIS 158616 (D.Conn. August 23, 2021)      5

*Associated Inv. Co. Ltd. Partnership v. Williams Assocs. IV*, 230 Conn. 148 (1994)      8

*Caldor, Inc. v. Heslin,* 215 Conn. 590 (1990)      6-7

*Coplin v. Hudson United Bank/Hub*, 2001 Conn. Super. LEXIS 3621
(Conn. Super. Ct. December 20, 2001)      12

*Deming v. Nationwide Mut. Ins. Co.,* 279 Conn. 745 (2006)      10, 12-13

*DVG Pub. Adjustment Servs., LLC v. Peoples United Bank,*
2016 Conn. Super. LEXIS 1055, (Conn. Super. Ct. May 12, 2016)      8-9

*Goldstein v. Rapp*, 2010 Conn. Super. LEXIS 2565
(Conn. Super. Ct. October 10, 2010)      11

*In re Hanover Square Sec.,* 55 B.R. 235 (N.Y. S.Brptcy Ct, November 22, 1985)      12

*Macomber v. Travelers Property & Casualty Corp.,* 261 Conn. 620 (2002)      12-13

*McGrath v. Fahey*, 126 Ill. 2d 78 (1988)      16-17

*National Equipment Rental, Ltd. v. Reagin,* 338 F.2d 759 (1964)      6

*Wilcox v. Fishers Island Ferry Dist.,*
2021 U.S. Dist. LEXIS 38524 (D.Conn. March 2, 2021)      14

*Willow Springs Condo. Ass'n v. Seventh BRT Dev. Corp.,* 245 Conn. 1 (1998)      6

### <u>RULES AND STATUTES</u>

Fed. R. Civ. P. 12(b)(6)      5

Conn. Gen. Stat. § 42-110b(c)      6

Conn. Gen. Stat. § 52-564      1, 10-11

### <u>OTHER AUTHORITIES</u>

Restatement (Second) of Torts § 46 (1965)      17

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AVI SMITH-RAPAPORT, | ) | Docket No.: 3:22-cv-00320 -MPS |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA, N.A. | ) | JUNE 9, 2022 |
| *Defendant.* | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I.     BACKGROUND

### A.     Overview

As federal jurisdiction in this matter is based upon diversity of citizenship, the issue of whether or not the Plaintiff has sufficiently alleged his three causes of action sounding in (1) a violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), (2) civil theft pursuant to C.G.S. § 52-564, and (3) Intentional Infliction of Emotional Distress is to be determined under Connecticut law. The Defendant's Motion to Dismiss ("MTD") does not challenge that the Plaintiff's Complaint properly sets forth the necessary elements to support his three causes of action under Connecticut law. Instead, the Defendant's MTD principally argues that the Plaintiff's Complaint does specifically allege that the Defendant violated some specific provision of the parties' contract and/or violated the Defendant's own internal policies and procedures.

In its effort to convert the issue of whether or not the Plaintiff's allegations adequately support the causes of action pled into the issue of whether or not the Defendant violated the parties' contract, the Defendant's Motion principally relies upon a single fact-specific holding of the Connecticut Superior Court, wherein the plaintiff's six causes of action pertaining to the defendant bank's freezing of funds were all anchored to the claim that the defendant bank had breached the parties' contract. Insofar as the plaintiff had failed to adequately plead its breach of contract claim, the subsequent counts that relied upon said breach of contract claim were also deemed deficient. There is otherwise no competent authority for the proposition that claims against a defendant bank sounding in CUTPA, Civil Theft and Intentional Infliction of Emotional Distress must include an allegation that the bank breached the parties' contract.

In response to the Defendant's initial MTD, the Plaintiff elected to amend his Complaint – not due to any perceived deficiency in setting forth the essential elements of his causes of action, but rather to directly confront the Defendant's complaint as to there being a lack of factual specifics supporting the Plaintiff's claims, as well as to confront the Defendant's implied suggestion that its conduct was somehow justified by the terms of the parties' contract and/or its internal policies and procedures. Moreover, where counts two and three allege intentional torts that place the Defendant's "intent" into issue, the Plaintiff wishes to assure the Court that he is not merely relying upon having met the technical pleading requirements regarding the Defendant's alleged malintent, but rather there are substantial facts to support said claims of intentional misconduct.

Although the Plaintiff's causes of action do not require allegations regarding the Defendant's conformity or non-conformity with the parties' contract and/or the Defendant's own

- 2 -

internal policies and procedures, it is nonetheless telling, as now alleged, that the Defendant affirmatively chose not to explain or defend its conduct in this matter, relative to some contract provision or internal policy or procedure. As set forth herein, courts have looked to the quality of a defendant's excuse or explanation for misconduct, in assessing whether there is sufficient evidence that the resulting harm was intentional. Such an evaluation of the evidence is not appropriate in the context of the Defendant's 12-b(6) Motion, but the Plaintiff's more detailed allegations nonetheless bolster his claims of intentional misconduct.

**B.    Allegations Of Complaint**

The Plaintiff's material factual allegations now before this Court are as follows, where all reasonable inferences are to be construed in favor of the Plaintiff:

(1)    The Defendant unilaterally closed all of the Plaintiff's accounts and, in so doing, extinguished a substantial "rewards" benefit that it affirmatively markets to prospective customers. (Amend. Compl., Count One, ¶¶ 7-8).

(2)    In shutting down the Plaintiff's accounts, the Defendant then detained the principal savings (over $90,000) of a modest family for an extended period of time, without explanation or justification, where said funds were immediately due and owing upon the closing of the accounts. Id. at ¶ 9.

(3)    The Defendant made and broke promises for months to explain its wrongful detention of the Plaintiff's funds, running the Plaintiff around in circles in what can reasonably be described as a taunting fashion, notwithstanding the Plaintiff expressing the extreme anxiety and stress said actions were causing him to suffer and notwithstanding the Defendant's regulatory duty to address the Plaintiff's complaint submitted to the Consumer Financial Protection Bureau ("CFPB") in a timely fashion. Id. at ¶¶ 10-15.

(4)    More than eight months after the Defendant wrongfully detained the credit balance in the Plaintiff's account, the Defendant finally released said funds to the Plaintiff, whereupon the Defendant implicitly, if not explicitly, acknowledged that said funds were the property of the Plaintiff and due and owing to the Plaintiff.  Id. at ¶ 16.

(5)     In releasing the Plaintiff's funds after eight months of detaining the same, the Defendant offered no explanation, justification or excuse for its extended and wrongful detention of the Plaintiff's property, but instead affirmatively asserted that it was choosing to remain silent on the question. Id.

(6)     The Plaintiff suffered economic losses due to the extended loss of use of his funds, in addition to suffering emotional distress and anxiety as a consequence of the Defendant's alleged misconduct. Id. at ¶ 21; Id. at Count Three, ¶ 17.

## C.     Summary Of Claims

By way of summary, the Plaintiff purposefully set out to take advantage of the "rewards" benefits offered and advertised by the Defendant as an inducement to prospective credit card and banking customers to choose the Defendant's products and services. When the Plaintiff had accumulated over 1,000,000 rewards points with the Defendant, the Defendant closed the Plaintiff's accounts, thereby negating the benefits the Plaintiff had accumulated in the Defendant's rewards program. In addition to negating the Plaintiff's rewards benefits, the Defendant froze and refused to release the credit balance in the Plaintiff's rewards account, which was over $90,000, representing the principal life's savings of the Plaintiff and his young family.

Over the course of the ensuing eight months, despite repeated promises to the contrary, the Defendant failed and refused to explain or justify its conduct, including in response to a formal complaint received by the Defendant from the Consumer Financial Protection Bureau. Despite the Plaintiff communicating to the Defendant the extreme stress and anxiety he was experiencing from having his savings detained and not knowing if or when the Defendant would release the funds, the Defendant persisted in its refusal to provide any information to the Plaintiff in response, up to the point the Defendant finally released the funds in late November 2021. Even upon releasing the

- 4 -

Plaintiff's funds, the Defendant affirmatively asserted that it would not provide any explanation for its conduct.

As set forth herein, in defining what sort of conduct qualifies as "extreme and outrageous" for purposes of establishing a claim for intentional infliction of emotional distress, the courts have embraced the following test: "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Infra, p. 15. The Plaintiff respectfully submits that said test is met by the Defendant's conduct alleged here, especially within the context of a MTD.

## II.    ARGUMENT

### A.    Legal Standard Re: Fed. R. Civ. P. 12(b)(6) Motion To Dismiss

In a recent case that also addressed a 12(b)(6) motion to dismiss a complaint alleging a CUTPA violation against a bank, this Court set forth the legal standard to be applied to such a motion.

> In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the plaintiff has alleged enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. While the Court must draw all reasonable inferences in favor of the non-moving party, it must grant the moving party's motion if a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims.

*Adams v. Liberty Bank*, 2021 U.S. Dist. LEXIS 158616, at *5 (D.Conn. August 23, 2021)(Citations and internal quotations omitted). Further, this is a diversity action where this Court is to apply the substantive law of Connecticut in determining whether the Plaintiff has sufficiently alleged the

- 5 -

necessary elements of his causes of action. "The essence of diversity jurisdiction is that a federal court enforces State law and State policy." *National Equipment Rental, Ltd. v. Reagin*, 338 F.2d 759, 762 (1964).

### B.    CUTPA

The Plaintiff's Complaint alleges two alternative grounds to support a finding that the Defendant's conduct violates CUTPA: (1) allegations of "an actual deceptive practice" and/or (2) allegations of conduct that is "immoral, unethical, oppressive, or unscrupulous." *Willow Springs Condo. Ass'n v. Seventh BRT Dev. Corp.,* 245 Conn. 1, 43 (1998). "Whether a practice is unfair and thus violates CUTPA is an issue of fact." Id.

### 1.    The Defendant's Negating The Plaintiff's Rewards Points Constitutes An Actual Deceptive Practice

Connecticut's CUTPA statute not only provides direct remedies for consumers, it also delegates authority to the State's Commissioner of Consumer Protection to "establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of [CUTPA]." *Caldor, Inc. v. Heslin*, 215 Conn. 590, 592 (1990), *quoting* General Statutes § 42-110b(c). Pursuant to said authority, the Connecticut Commissioner of Consumer Protection determined that certain "net price advertising" concerning manufacturer rebate programs violated CUTPA because it "misleads the consumer about the price the consumer will pay for that product." Id. at 597. In *Caldor, Inc. v. Heslin,* the plaintiff retail corporation challenged the Commissioner's determination that certain net price advertising was "deceptive" in violation CUTPA, and the

Connecticut Supreme Court upheld the Commissioner's determination, despite the absence of any finding that said advertising also violates the Federal Trade Commission Act. Id. at 597-598.

Here, there can be no serious dispute that the Defendant engages in various advertising and marketing whereby it makes representations promoting the advantages of its rewards program for customers who participate in the program, as alleged. The Defendant does not challenge the substance of these allegations. The Plaintiff then alleges that said advertising and marketing is "deceptive," where the Defendant not only retains the ability to close a rewards account and thereby extinguish all the accumulated rewards points in the account, but also that the Defendant may take such action without warning, explanation or justification.

Within the context of the Defendant's 12(b)(6) MTD, the question then becomes – "whether the plaintiff has alleged enough facts to state a claim to relief that is plausible on its face?"  The holding in *Caldor, Inc. v. Heslin* is instructive on this issue, given the similarities between a rebate program and a credit card rewards program, where both involve purported back-end benefits deriving from consumer expenditures. The test that was approved in *Caldor, Inc. v. Heslin* for finding a violation of CUTPA was whether the rebate advertising "misleads the consumer." The Plaintiff respectfully submits that his allegations set forth a "plausible" claim that the Defendant's rewards points advertising is misleading to consumers, such that it constitutes a violation of CUTPA under the holding in *Caldor, Inc. v. Heslin.*

The Defendant's MTD does not directly challenge the above analysis that its rewards points advertising was deceptive, as alleged. Instead, the Defendant argues that the Plaintiff cannot sustain his CUTPA claim in the absence of an allegation that the Defendant violated the parties'

contract. There is no competent legal authority to support the proposition that a consumer CUTPA

claim against a bank must be accompanied by an allegation that the bank breached its contract.  In

*Associated Inv. Co. Ltd. Partnership v. Williams Assocs. IV*, 230 Conn. 148 (1994), the

Connecticut Supreme Court made clear that an action brought under CUTPA is not limited to

claims that could have been asserted under common law, such as breach of contract.

> Finally, there is no suggestion, either in the legislative history of CUTPA or in
> the language of the statute itself, that the legislature sought to codify or supplant
> any existing common law claim by enacting the private cause of action under
> CUTPA. On the contrary, the action established by CUTPA provides a remedy
> for a wider range of business conduct than does the common law, *and CUTPA
> exists wholly independent of any common law claim.*

Id. at 161 (Emphasis added).

The Defendant's argument on this issue relies entirely upon the Superior Court holding in

*DVG Pub. Adjustment Servs., LLC v. Peoples United Bank*, No. CV156055941S, 2016 Conn.

Super. LEXIS 1055, (Conn. Super. Ct. May 12, 2016). In *DVG Pub. Adjustment Servs., LLC,* the

court struck the plaintiff's breach of contract claim due to a failure of the plaintiff to identify the

provision of the contract that the defendant bank allegedly breached, as noted in the Defendant's

Memorandum of Law (p. 6): "In granting the defendant's motion to strike, the court first noted

that 'Superior Court judges have uniformly held that, in order to plead facts sufficient to establish

the element of breach, the plaintiff must identify the specific provision of the contract that the

defendant violated.'"

The court likewise struck the plaintiff's CUTPA count, because the foundation of the

plaintiff's CUTPA claim was its breach of contract claim, where the plaintiff re-alleged its breach

- 8 -

of contract allegations and then asserted that the bank's conduct "far exceeded anything provided for in [the account contract] or under the Uniform Commercial Code." *DVG Pub. Adjustment Servs., LLC v. Peoples United Bank*, 2016 Conn. Super. LEXIS 1055, supra, at *18. The court noted that the plaintiff failed to "provide any analysis or legal authority in support of this claim." Id.

The court further noted that not every breach of contract claim gives rise to a CUTPA action: "With respect to CUTPA claims that are predicated on alleged breaches of contract, not every contractual breach rises to the level of a CUTPA violation." Id. at *19 (Citations and internal quotations omitted). As such, the fact-specific holding in *DVG Pub. Adjustment Servs., LLC v. Peoples United Bank* is readily distinguishable from the case at hand, where the Plaintiff's CUTPA claims here are in no manner connected to, nor reliant upon, an allegation that the Defendant breached its contract.

> **2.    The Defendant's Unjustified And Unexplained Detention Of The Plaintiff's Credit Balance, As Alleged, Qualifies As Conduct That Is "Immoral, Unethical, Oppressive, Or Unscrupulous"**

With respect to the Plaintiff's CUTPA claim, the Defendant's MTD does not directly confront the allegations set forth in Count One, paragraph eighteen of the Plaintiff's Amended Complaint that the Defendant's conduct in freezing the Plaintiff's credit balance for an indefinite and extended period of time, without explanation or justification, constitutes conduct that is deceptive, immoral, unethical, oppressive, and unscrupulous. The Defendant's only challenge to this claim is its argument that the Plaintiff cannot maintain a CUTPA claim, absent an allegation that the Defendant breached the parties' contract.

> Plaintiff cannot state a valid CUPTA claim without a violation of some
> established standard. The Amended Complaint acknowledges the existence of
> governing agreements and program rules. By the absence of any claim that
> BANA breached those agreements, Plaintiff has conceded BANA did not
> breach those agreements, and that no CUPTA claim can arise.

(Def. Mem. of Law, p. 6).

As set forth in Section II.B(1) above, there is no pleading requirement to include an allegation of breach of contract for an action sounding in CUTPA. Moreover, the Plaintiff's allegations regarding the Defendant's detention of a substantial amount of his funds, for an indefinite and extended period of time without explanation or justification, support a claim of civil theft under C.G.S. § 52-564, as set forth below. Also as set forth below, a claim for civil theft must satisfy the elements of criminal larceny. There can be no serious question but that an allegation of criminal larceny, in effect, constitutes "a violation of some established standard," for purposes of supporting a CUTPA claim and/or establishing that the conduct at issue is immoral, unethical, oppressive, or unscrupulous.

## C.      Statutory Theft – C.G.S. § 52-564

The Defendant's Memorandum of Law (pp. 6-7) properly sets forth the pleading requirements for an action sounding in statutory theft, quoting *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 771 (2006). Specifically, the Defendant can be found liable for statutory theft if it converted funds owed to the Plaintiff, by wrongfully withholding said funds from the Plaintiff, with the intent of depriving the Plaintiff of his funds so withheld.

- 10 -

The Plaintiff has pled the essential elements for a claim sounding in civil theft under C.G.S.

§ 52-564, as set forth in Count Two, paragraph seventeen of the Amended Complaint:

> In freezing the credit balance in the Plaintiff's Rewards Account for an extended and indefinite period of time, at a time when said balance was immediately "owed to" the Plaintiff, Bank of America thereby stole said funds from the Plaintiff, by wrongfully withholding said funds from the Plaintiff and refusing to release them upon demand by the Plaintiff, with the intent of depriving the Plaintiff of said property.

When the elements of C.G.S. § 52-564 have been properly pled, the Connecticut courts routinely

deny motions to strike claims sounding in civil theft.

> Superior Courts have consistently denied motions to strike when intent is pleaded. In *DeHart v. Crossen*, Superior Court, judicial district of Windham, Docket No. CV 044000241, 2005 Conn. Super. LEXIS 1474 (June 3, 2005, Riley, J.), the court denied the motion to strike because defendant had added the additional allegation of intent necessary to state a cause of action for theft stating that whether the defendant can substantiate this claim is irrelevant to the present motion. See also *Coyle Crete, LLC v. Nevins*, [Superior Court, judicial district of New Haven,] Docket No. CV 06 5004795 (December 2, 2008, Holden, J.) (46 Conn. L. Rptr. 761, 764, 2008 Conn. Super. LEXIS 3115) (denying motion to strike because plaintiff alleged that the defendant intended to withhold the funds in order to appropriate the same to a state marshal); *Coston v. Reardon*, Superior Court, judicial district of Windham, Docket No. 063892 (October 18, 2001, Foley, J.) (30 Conn. L. Rptr. 611, 612, 2001 Conn. Super. LEXIS 3188) (denying motion to strike because pleaded conversion plus that defendant intended to deprive plaintiff of property by destruction and/or injury of personal property). (Internal quotation marks omitted.) *Today's Kids, LLC v. Bach*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 08 5009121, 2009 Conn. Super. LEXIS 2595 (October 1, 2009, Adams, J.).

*Goldstein v. Rapp*, 2010 Conn. Super. LEXIS 2565, *7-8 (Conn. Super. Ct. October 10, 2010).

Notwithstanding the Plaintiff pleading the essential elements of a civil theft claim, the

Defendant's Memorandum of Law asserts (p. 7) that the Plaintiff's allegations are not clear on the

question of whether the "credit balance" alleged represents "legal ownership or right to possession of specifically identifiable moneys." The Plaintiff's allegations identify a very specific sum of money – "over $97,000." (Amend. Complaint, Count One, ¶ 7). The Plaintiff further alleges that said identifiable amount of money was "immediately 'owed to' the Plaintiff" when the rewards account was closed. These allegations are further bolstered by the Defendant later delivering the owed funds to the Plaintiff, without offering any explanation or justification for their indefinite and extended detention, even in the face of a complaint presented to the Defendant by the CFPB.

The Defendant's Memorandum of Law (p. 7) argues, without supporting citation, that a credit balance cannot be the subject of a conversion claim: "As an initial matter, a 'credit balance' is not property; it is a credit owed to a customer." The Defendant presented no authority or analysis in support of its characterization of a "credit balance." See, e.g., *In re Hanover Square Sec.*, 55 B.R. 235, 241(N.Y. Southern Bankruptcy Court, November 22, 1985)("Free credit balances 'are funds left with a broker-dealer firm by customers who have an unrestricted right to withdraw them on demand.. . . .''). Connecticut courts have permitted civil theft cases to proceed against banks for the detention of account funds owed to the customer, after the customer has demanded release of the funds. See, e.g., *Coplin v. Hudson United Bank/Hub*, 2001 Conn. Super. LEXIS 3621, *14 (Conn. Super. Ct. December 20, 2001)("The proof that the defendant committed statutory theft was that the defendant did in fact charge the plaintiff's account for the debt of his mother, and refused the plaintiff's requests to recredit his account, thus precipitating this law suit.").

Finally, the Defendant's Memorandum (pp. 6-7) cites to *Deming v. Nationwide Mut. Ins. Co.*, supra 279 Conn. at 771 and *Macomber v. Travelers Property & Casualty Corp.*, 261 Conn.

620, 650 (2002) for the proposition that a "mere obligation to pay money may not be enforced by a conversion action." The specific facts of both cases, however, are easily distinguished from the case at hand. In *Deming v. Nationwide Mut. Ins. Co.,* the parties were in dispute as to whether the defendant insurance company owed money to the plaintiffs under an employee deferred compensation plan, where the defendant argued that the plaintiffs' conduct resulted in a forfeiture of any monies due under the plan. 279 Conn. at 770. On summary judgment, the Court determined that the plaintiffs could not maintain a conversion action for funds that they had never acquired in the first place. "They have not alleged, nor do they contend in their briefs to this court, that they ever possessed or owned legal title to these funds. At best, the defendants merely are obligated to pay the money." Id. at 773.

Similarly, in *Macomber v. Travelers Property & Casualty Corp*., the plaintiffs asserted a conversion claim relative to insurance premium payments that the defendant insurance company was required to make on the plaintiffs' behalf to fund a personal injury settlement annuity. Supra, 261 Conn. at 630-634. Instead of making payment of the full premium amount, the plaintiffs alleged that the defendant insurance company received a premium rebate, which was described as a "rebate scheme." The court rejected the plaintiffs' conversion claim relative to the funds retained by the insurance company by way of premium rebates. "Given that the plaintiffs did not allege that they owned or were ever in possession of the money that, they contended, is currently in the defendants' possession, their conversion claim, as to the rebating scheme, must be stricken." Id. at 651.

- 13 -

Neither *Deming* nor *Macomber* provide authority for dismissing the Plaintiff's civil theft claim, where there was no allegation in either case that the plaintiffs ever owned or possessed the object of their conversion claims. Here, the Plaintiff has alleged ownership of the credit balance at issue, including in his alleging that "said credit balance constituted a significant portion of the savings for the Plaintiff's family." (Amend. Complaint, Count One, ¶ 7). To the extent the Defendant wishes to contest the Plaintiff's claim to ownership of the "credit balance," it is incumbent upon the Defendant to produce facts to challenge the Plaintiff's allegations. The Defendant's 12(b)(6) MTD is not the proper vehicle for presenting such a fact challenge.

**D     Inentional Infliction Of Emotional Distress**

In a recent case, this Court set forth the four elements that must be pled in support of a claim for intentional infliction of emotional distress.

> It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . .

*Wilcox v. Fishers Island Ferry Dist.,* 2021 U.S. Dist. LEXIS 38524, *15 (D.Conn. March 2, 2021)(Citations omitted). This Court further noted it is initially for the court, playing a gatekeeper role, to determine whether the conduct at issue meets the threshold for being considered "extreme and outrageous," such that it becomes an issue for the jury only in instances where reasonable minds can disagree. Id. This Court further expounded upon what conduct can qualify as "extreme and outrageous" as follows: "Generally, the case is one in which the recitation of the facts to an

average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. at * 16 (Citations omitted).

The Plaintiff respectfully submits that the facts alleged here satisfy the hypothetical test of imagining whether an average member of the community would exclaim "outrageous!" upon hearing of the Defendant's conduct towards the Plaintiff. It would be nothing less than a nightmare for the head of any young family to imagine having their bank summarily close the family's bank accounts, without explanation or justification, coupled with refusing to release the family's principal life savings, again without explanation or justification. And then to add insult to injury, the bank customer is put through a tortuous process of spending hours on the phone (repeatedly placed on hold) in efforts to get answers, amidst being passed from one bank representative to another, where promises are repeatedly made and broken to provide some explanation for what has transpired. This process also extends to assurances and promises being made and broken in connection with a formal CFPB complaint – a regulatory body designed to assist aggrieved financial consumers. This process then extends over the course of eight months, until the bank finally releases the detained sum of just under $100,000, at which point the bank affirmatively refuses to provide any explanation for its conduct.

While arguably "reasonable minds" could differ in assessing such a scenario, there can be little doubt that a majority of the community would readily label the Defendant's conduct as being "outrageous." Such is especially true in view of the reasonable inference to be drawn that the Defendant's conduct was motivated by a self-serving desire to eliminate the 1,000,000+ rewards points accumulated by the Plaintiff in his account. In any event, the Plaintiff respectfully submits

- 15 -

that these facts are sufficient to satisfy the court's gatekeeping function of first determining whether the facts alleged pass the threshold test for extreme and outrageous conduct.

Additionally, in a case involving very similar facts, the Illinois supreme court upheld the appellate court's reversal of the lower court's dismissal of a claim for intentional infliction of emotional distress against a bank for withholding funds owed to a customer. *McGrath v. Fahey*, 126 Ill. 2d 78 (1988). Specifically, the bank refused to release ten certificates of deposit ("CDs") owned by the plaintiff and totaling over $1,000,000. Id. at 82-83. During the plaintiff's communications with the bank, he informed the bank that its conduct was making him "extremely anxious," which caused him to fear for his health given his family's history of having heart trouble. Id. at 83. The bank's wrongful detention of the plaintiff's CD funds included threats by the bank to financially ruin the plaintiff, and the plaintiff did suffer a heart attack requiring surgery, prior to the bank agreeing to release the CD funds after 12 days of wrongfully detaining them. Id. at 83-85.

In determining to allow the plaintiff's claim for the intentional infliction of emotional distress to stand, the Illinois court focused on three factors that are all present here.

> This conduct could easily be deemed outrageous by a jury. This is particularly true in view of the apparent economic power which defendants exercised over plaintiff, in view of the alleged total lack of any legal justification for the objective which defendants were attempting to achieve, and in view of defendants' alleged knowledge of plaintiff's special susceptibility.

Id. at 92-93. Here, the Defendant was also in a position of economic power relative to the Plaintiff. The Defendant also has proffered no legal justification for its conduct. And the Plaintiff here also communicated to the Defendant the anxiety and stress its conduct was causing him to suffer. Also,

the Plaintiff's funds here were detained for over eight months – compared to less than two weeks in *McGrath v. Fahey.*

Significantly, in upholding the plaintiff's claim for intentional infliction of emotional distress, the Illinois court was expressly guided by the provisions of the Restatement (Second) of Torts § 46 (1965). *McGrath v. Fahey,* supra, 126 Ill. 2d at 86-89. Connecticut courts likewise follow the guidance of the § 46 of the Restatement in assessing what conduct can support a claim for intentional infliction of emotional distress. See, e.g., *Callahan v. Hennessy*, 2002 Conn. Super. LEXIS 281, *6 (Conn. Super. Ct. February 6, 2002)("[T]he Restatement (Second) of Torts § 46 has been cited with approval in several decisions" of Connecticut's higher courts).

## **CONCLUSION**

For all of the foregoing reasons, the Defendant's MTD should be denied.

PLAINTIFF
AVI SMITH-RAPAPORT,


By  */s/ Thomas P. Willcutts*
Thomas P. Willcutts (Fed Bar:
ct09422)
Willcutts & Habib LLC
100 Pearl Street; 14th Fl
Hartford, CT 06103
Tel: (860) 249-7071
tpw@willcutts.com

## <u>CERTIFICATION</u>

This is to certify that on this 9th day of June, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


By */s/ Thomas P. Willcutts*
    Thomas P. Willcutts
    Fed Bar: ct09422